**UNITED STATES of America,**
**Appellant,**

v.

**Asa ABBETT, Appellee.**

**No. 24167.**

United States Court of Appeals
Fifth Circuit.

Aug. 2, 1967.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., Harvey L. Zuckman, David L. Rose, Attys., Dept. of Justice, Washington, D. C., for appellant.

James A. Turner, Tuscaloosa, Ala., for appellee.

Before RIVES and DYER, Circuit Judges, and JOHNSON, District Judge.

DYER, Circuit Judge:

This is an appeal by the United States of America from a summary judgment in favor of Asa Abbett, for $2,476.80, the value, as determined by the District Court, of annual and sick leave she expended while awaiting determination of her involuntary application for civil service disability retirement filed on her behalf by the Veterans Administration.

In January and February, 1961, two examinations, physical and psychiatric, were made of appellee at the request of her supervisor as a result of which she was, on February 9, 1961, placed on involuntary sick leave from her civil service job, and on February 28, 1961, informed that an application for her disability retirement had been filed for her by the Veterans Administration Hospital where she worked. She objected to this action to the Civil Service Commission, was given the opportunity to and did submit to further examinations. On the basis of the evidence available, the Commission granted the retirement application on May 3, 1961. Appellee was

informed of her right to appeal this decision and did so on May 9, 1961. A further examination was made, and, on August 4, 1961 the Commission found that, "Based on the latest examination and her appeal our original action of allowance has been reversed and your application for her disability retirement is rejected." Appellee was returned to work on August 14, 1961.

From February 9 to August 14, 1961, appellee continued to receive compensation by using 732 hours of sick leave and 300 hours of annual leave. After her reinstatement, she unavailingly attempted to get this leave time restored through the Civil Service Commission, the Veterans Administration, the General Accounting Office and the Comptroller General. In February, 1963, she became ill and accepted optional retirement on May 31, 1963. Before retiring she used all sick leave accrued since her reinstatement and could have used the sick leave expended in 1961. After retiring she filed suit under 5 U.S.C.A. § 652.[1]

The District Court based its award upon a violation of the 5 U.S.C.A. § 652(b) (1).[2] With this we cannot agree. That section of the Lloyd-LaFollette Act requires that two factors be present before an award of compensation is made. First, there must have been a removal or suspension without pay under 5 U.S.C.A. § 652(a).[3] Second, there must have been a reinstatement based on an unjustified or unwarranted suspension without pay or removal. Placing appellee in an involuntary leave status pending determination of the application for involuntary retirement constituted a suspension without pay within the purview of the Lloyd-LaFollette Act. Cf. Hart v. United States, 1960, 148 Ct.Cl. 10, 284 F.2d 682.[4] Although appellee received compensation during the period of her forced absence from work, she was deprived of her pay by means of charging the compensation against her accumulated annual and sick leave. The hours of leave which appellee was forced to use had been earned in

1. This section provides in relevant part:

"(a) No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service and for *reasons* given in writing. Any person whose removal or suspension without pay is sought shall (1) have notice of the same and of any charges preferred against him; (2) be furnished with a copy of such charges; (3) be allowed a reasonable time for filing a written answer to such charges, with affidavits; and (4) be furnished at the earliest practicable date with a written decision on such answer. No examination of witnesses nor any trial or hearing shall be required * * *.

"(b)(1) Any person removed or suspended without pay under subsection (a) who * * * is reinstated or restored to duty on the ground that such removal or suspension was unjustified or unwarranted, shall be paid compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended * * *.

2. See note 1 supra.

3. See note 1 supra.

4. With reference to the District of Columbia Circuit we disagree that the Civil Service Retirement Act and the Lloyd-LaFollette Act are independently operative in their respective fields. See Ellmore v. Brucker, 1956, 99 U.S.App.D.C. 1, 236 F.2d 734. Furthermore, the Comptroller General recognizes the applicability of the Lloyd-LaFollette Act to situations in which an employee is placed in involuntary leave status pending action on an application for involuntary retirement. In 39 Comp.Gen. 154 he recredited sick leave to an employee because the "suspension" was unjustified. § 652(b) applies only to persons "removed or suspended without pay under subsection (a)." Therefore, in order to recredit the sick leave, it was necessarily found that a suspension without pay had occurred while the employee was in a sick leave status. In this case the Comptroller General stated that there was no evidence that the initial action taken was contrary to medical evidence. This raises the clear implication that if the contrary had been shown § 652(b)(1) would have been applicable. The provisions of § 652 (a) and (b)(1) cannot be severed.

years of government service for her to use when she so desired. This benefit was in no way intended to become a device whereby a supervisor could, with impunity, separate an employee from the payroll.

■ However, a recovery under 5 U.S. C.A. § 652(b) (1) [5] must be based upon a reinstatement "on the ground that such removal or suspension was unjustified or unwarranted." A careful consideration of the record reveals no evidence that appellee was reinstated for that reason. Here the reinstatement was based upon an examination made *after* the initial approval of the application for involuntary retirement, not upon a reconsideration of the evidence available at the time of that approval.[6] Had the Commission originally acted contrary to the available medical evidence, its decision might have been unjustified or unwarranted. But this was not the case. The Commission's action was solidly grounded upon the evidence available. It was not the intent of the Act to permit recovery by an employee simply because later evidence, contrary to that upon which the decision was based, is presented to and accepted by the appellate board. Therefore, the award based upon a violation of § 652(b) (1) cannot stand.

■ There remains, however, the question of whether the procedural safeguards of 5 U.S.C.A. § 652(a) [7] were met before the suspension without pay on February 9 or at any time thereafter, for if they were not, appellee is entitled to restoration of leave used during the period in which the required procedure was not followed. It is clear that all of the procedural requirements of the Lloyd-LaFollette Act had been met by May 3 when appellee was notified that the retirement application had been approved. The letter of February 28 in-

formed appellee that the Hospital was seeking her involuntary retirement on grounds of total disability. Appellee's correspondence, reproduced in the record, makes it clear that she had been notified that the "charges" against her, *i. e.,* total disability, were grounded in her mental and physical health. In an involuntary retirement proceeding appellee was not entitled to see the medical reports, Cerrano v. Fleishman, 2 Cir. 1964, 339 F.2d 929, cert. denied, 382 U.S. 855, 86 S.Ct. 106, 15 L.Ed.2d 93, nor was she entitled to a hearing, 5 U.S. C.A. § 652(a); Chafin v. Pratt, 5 Cir. 1966, 358 F.2d 349. She was given time to present evidence in her own behalf, and in fact did so. On May 3 she was furnished with the written decision of the Commission. Since the procedural requirements of the Act were met as of that date she cannot recover for the leave used between May 3 and August 14, *i. e.,* during the appellate process.

■ However, it is equally clear that none of the procedural requirements were met prior to the February 9 suspension without pay. She was not given notice of the impending suspension or of the reasons for it. Nor was she given an opportunity to answer the charges. Therefore, the suspension from February 9 to May 3, 1961, was in violation of the Act, and Appellee is entitled to recover for the leave she was forced to use during that period. Hart v. United States, 1960, 148 Ct.Cl. 10, 284 F.2d 682, 687. Compare Paterson v. United States, 1963, 162 Ct.Cl. 675, 319 F.2d 882, 886 (violation of procedural requirements of Veterans' Preference Act).

Reversed and Remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

5. See note 1 supra.

6. The case of Kleinfelter v. United States, 1963, 162 Ct.Cl. 88, 318 F.2d 929, relied upon by the District Court, is not applicable here. In *Kleinfelter* the employee

was reinstated on the ground that he was not disabled at the time he was placed on sick leave. In this case no such determination was made or implied.

7. See note 1 supra.